572 A.2d 567

**Allan JACKSON, Jr.**

v.

**STATE of Maryland.**

**No. 1174, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 1, 1990.

Arthur A. Delano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ROSALYN B. BELL, JJ.

MOYLAN, Judge.

The overriding interest of fundamental fairness will occasionally dictate, under special circumstances in a rare case, the carving out of an exception from an otherwise salutary rule. That is as it should be. Whenever that occurs, creative defense counsel invariably seek to expand the exception to the limits of its logic. That also is as it should be. Equally invariably, they frequently try to push it beyond the limits of its logic. The exception, unless vigilantly restrained, soon threatens to swallow its rule. The "rare" soon becomes commonplace. Such a pattern is now unfolding with the case of *Hook v. State*, 315 Md. 25, 553 A.2d 233 (1989). Indeed, if such awards were given, *Hook* would probably qualify as the contention-generating case of the year.

The precise issue under scrutiny is the authority of the State to enter a *nolle pros* as to one or more counts once a trial is in progress. *Hook* asserted that in this regard, "The prosecutor's power is not absolute." 315 Md. at 36, 553 A.2d 233. As *Hook* candidly acknowledged throughout the entire course of its discussion, however, it was not stating the general rule; it was recognizing rather a limited exception to the rule. "We think that *the exceptional circumstances* of this case present *a rare occasion* calling for *a tempering of the broad authority* vested in a State's Attorney to terminate a prosecution by a *nolle prosequi.*" 315 Md. at 41, 553 A.2d 233. (Emphasis supplied).

The rule itself with respect to the generally broad and exclusive authority of the State's Attorney to enter a *nolle pros* was well stated by Judge Eldridge for the Court of

Appeals in *Ward v. State,* 290 Md. 76, 83, 427 A.2d 1008 (1981):

"The entry of a *nolle prosequi* is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent.... A *nolle prosequi* may be entered as to an entire charging document, or one or more counts, or even a part of a count." (Citations and footnote omitted).

What then will qualify as the "exceptional circumstances" presenting the "rare occasion" that calls for the "tempering of the broad authority vested in a State's Attorney"?

*Hook* recognized as controlling authority *Ward v. State, supra,* on the proposition that the decision as to a *nolle pros* "is generally within the sole discretion of the prosecuting attorney, free from judicial control." 315 Md. at 35, 553 A.2d 233. The limited exception *Hook* carved out from that authority is that the act of *nolle prossing* may not be manipulated so as to perpetrate an injustice:

" 'This "settled rule" allowing prosecutorial choice,' however, is not completely without restraint. The prosecutor's power is not absolute....

. . . . .

We recognized in *Ward v. State,* 290 Md. at 83 n. 6, 427 A.2d 1008, that '[t]here is authority ... suggesting that the court may or may not permit the entry of the *nolle prosequi* in order to prevent injustice.' ...

'The right of an accused to a fair trial, although not a perfect trial, is paramount.' " (Citations and footnote omitted).

315 Md. at 35–36, 553 A.2d 233. "Injustice," moreover, is not a term lightly to be invoked. *Hook* "cautioned" that it was narrowly conditioning the exception not upon a mere denial to a defendant of some technical advantage or tactical edge he otherwise might enjoy but only upon the transcendent consideration of preventing true injustice:

" 'In order to declare a denial of [fundamental fairness, the reviewing court] must find that the absence of that fairness fatally infected the trial; the acts complained of

must be of such quality as necessarily prevent a fair trial....' "

315 Md. at 36–37, 553 A.2d 233 *quoting Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941).

*Hook* did not pronounce a sweeping rule that the State may not *nolle pros,* or otherwise seek to relieve the jury from considering, lesser included charges. That "broad authority" in the prosecutor was only "tempered," not eliminated. The *Hook* exception does not preserve to a defendant the possible "windfall" of jury confusion or the chance to exploit an otherwise legitimate tactical advantage. The *Hook* exception does not guarantee a defendant his opportunistic invitation to the jury "to split the difference" with a convenient compromise. The only function of the *Hook* exception is to prevent the State from eliminating the realistic option of *a genuinely plausible verdict,* a verdict supported not by hypothetical possibility but by a believable evidentiary scenario actually before the court. For this reason, *Hook* eschewed any blanket pronouncement and called instead for a "case-by-case evaluation" based upon the unique unfolding of each trial:

> "[U]nder the concept of fundamental fairness with respect to a trial in a criminal case, the broad authority vested in a prosecutor to enter a *nolle prosequi* may be fettered *in the proper circumstances. A case-by-case evaluation is necessary."* (Emphasis supplied).

315 Md. at 37, 553 A.2d 233.

*Hook* itself provided a textbook example of "the special circumstances" of "the rare case." Two eyewitnesses testified to Hook's having shot and killed two persons in the course of a robbery. Hook himself confessed to the killings. Notwithstanding the plea of not guilty, there was no contesting the fact that Hook was guilty of some level of felonious homicide. A very real question remained, however, as to his level of guilt. There was extensive evidence that Hook had been drinking heavily throughout the course of the afternoon and evening before the killing. Indeed, at the penalty stage of the trial, the jury rejected the death

penalty for Hook, designating "his intoxication" as one of the mitigating factors.

The defense theory was that Hook, albeit guilty of felonious homicide generally, was too intoxicated to form the specific intent necessary for premeditated first-degree murder. Under those circumstances, Hook vigorously objected to the State's *nolle prossing* of the second-degree murder charge. Based upon that *nolle pros,* moreover, the trial judge refused even to instruct the jury as to the possibility of second-degree murder. As the *Hook* opinion pointed out, this denied the jury the option of a plausible verdict that was no mere hypothetical possibility but one realistically supported by prominent evidence in the case:

"Hook requested an instruction on second degree murder. The evidence warranted the instruction—second degree murder was fairly supported by the evidence. The jury, in the exercise of its function to judge the credibility of the witnesses and weigh the evidence, could have reasonably found that Hook was so intoxicated as to lack the capacity to entertain the specific intent necessary to commit premeditated murder."

315 Md. at 41, 553 A.2d 233.

Denied any middle ground, the jury was confronted with the stark choice of "double or nothing," finding Hook guilty of premeditated first-degree murder or setting him free. With no support in the evidence at all for a not guilty verdict, the jury chose the only other course open to it. As the *Hook* opinion described the difficult choice, at 315 Md. 42, 553 A.2d 233:

"We are mindful of the context in which the jury deliberated. Hook confessed that he shot and killed two persons and stole their property. These admissions were buttressed by the testimony of two eyewitnesses. Hook made no attempt to refute or dispute that evidence.... Proof of the *corpus delicti* and Hook's criminal agency stood bright and clear. So the jury was called upon to render judgment on an admitted murderer and thief with no alternative but to find him guilty or not guilty of

murder in the first degree and guilty or not guilty of armed robbery."

The "rare occasion" of a true injustice was before the Court:

"We think that the exceptional circumstances of this case present a rare occasion calling for a tempering of the broad authority vested in a State's Attorney to terminate a prosecution by a *nolle prosequi*. We believe that the State, in entering the *nolle prosequi* here, failed to observe that fundamental fairness essential to the very concept of justice. Its action was inconsistent with the rudimentary demands of fair procedure."

315 Md. at 41–42, 553 A.2d 233.

*Hook*, indeed, had relied heavily upon the decision of *Keeble v. United States*, 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973), in which the Supreme Court had observed:

"Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." (Emphasis in original).

Based upon this rationale, *Hook's* statement as to the circumstances required for applying the exception was clear:

"*When the defendant is plainly guilty of some offense*, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense.... In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense." (Emphasis supplied).

315 Md. at 43–44, 553 A.2d 233.

In *Fairbanks v. State*, 318 Md. 22, 566 A.2d 764 (1989), the Court of Appeals had the opportunity to apply the *Hook*

doctrine. In that case, the State had *nolle prossed* a count charging misdemeanor breaking and entering under Md. Ann.Code, art. 27, § 31A (1982 Repl.Vol.), leaving for the jury only charges involving a breaking "with larcenous intent." In *Fairbanks*, the Court of Appeals invoked the *Hook* exception because the actual evidence fairly permitted a conclusion that the appellant there had broken into and entered a house but had done so without larcenous intent. The suspect, in a statement to an investigating officer, "admitted having thrown a brick through a window of the house but denied any knowledge of the property that had been found in and near his car." 318 Md. at 24, 566 A.2d 764.

Against this standard, we turn our attention to the present appeal.

## The Present Appeal

The appellant, Allan Jackson, Jr., was convicted by a Baltimore City jury, presided over by Judge Marvin Steinberg, of 1) possession of cocaine with intent to distribute, 2) conspiracy to distribute cocaine, and 3) conspiracy to possess cocaine with intent to distribute. Upon this appeal, the appellant raises the following five contentions:

1. That the evidence was not legally sufficient to sustain his convictions;

2. That Judge Steinberg erroneously permitted the State to *nolle pros,* over the appellant's objection, the lesser included counts of possession of cocaine and conspiracy to possess cocaine;

3. That following the *nolle pros* of the charges of simple possession and conspiracy to possess, the continuation of the trial on the greater charges was barred by double jeopardy principles;

4. That Judge Steinberg erroneously failed to grant the appellant a continuance to secure the presence of a defense witness; and

5. That Judge Steinberg erroneously permitted the intro-' duction into evidence of personal records taken from the appellant's person at the time of his arrest.

### Evidentiary Sufficiency

■ On the afternoon of April 20, 1988, Officer Dennis Turman and several other members of the Baltimore City Police Department Drug Enforcement Unit were conducting a drug surveillance at the corner of Stockton and Laurens Streets. Police attention was focused on the appellant and an ultimate codefendant named Marshall McNeill. The pattern that repeated itself on several occasions was that, as the appellant and McNeill stood on the corner conversing, an individual, exhibiting the physical characteristics of a drug addict, approached the twosome. The suspected customer would first converse with McNeill and then hand over some currency to the appellant. While the appellant remained on the corner with the customer, McNeill would walk to a nearby open lot where he would remove small objects from a plastic bag. McNeill would return to the corner and turn over a small baggie containing a white substance to the "customer," who would then leave. McNeill and the appellant would resume conversation while awaiting the arrival of the next "customer."

After this pattern repeated itself several times, the police moved in. Seized from the appellant was $236 from his sock. Also seized was a datebook, a notebook, and a phone/address book. A plastic bag containing 36 baggies of cocaine was recovered from the lot. Upon the approach of the police, McNeill had been seen placing a rectangular-shaped hide-a-key on the top of a meter pole. It was recovered and found to contain 13 small baggies of cocaine.

Expert police testimony described all of this activity as being indicative of drug sales. Under the circumstances, the evidence was clearly sufficient to support the jury verdicts that the appellant and McNeill were, in combination, selling cocaine.

### *The Propriety of the Nolle Prosses*

■ Invoking *Hook,* the appellant claims that the *nolle prossing* of two lesser charges by the State, over his objection, denied the jury the third option of convicting him of simple possession and of conspiracy simply to possess. Under the circumstances of this case, such verdicts, albeit legally quite proper, would have been irrational. The appellant presented no defense evidence at all, let alone any suggesting criminal involvement but at a lower level of guilt. The State's evidence itself generated no plausible intermediate possibility. The defense theory was that the appellant's involvement with McNeill and the various third persons was so ambiguous and that his proximity to the drugs found on the lot and in the possession of McNeill was so peripheral that the evidence was not legally sufficient to convict him of anything.

This was not one of those rare cases where the appellant was almost certainly guilty of criminal activity in some fashion but where there was legitimate doubt as to the level of his complicity. Under these circumstances, it would have been an affirmative nuisance "to muddy the waters" with unnecessary complications involving intermediate offenses that were only theoretically possible but not realistically plausible. Such a situation does not remotely call for the *Hook* exception to the general rule.

### *Double Jeopardy*

■ The appellant argues that once a *nolle pros* is entered in the case as to any count, that represents an acquittal as to that offense and precludes any further and continuing jeopardy as to any other count that could be deemed "the same offense" according to *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). One answer is that the *nolle prosses* here in no sense constituted acquittals. It is not uncommon before submitting a case to the jury to "tidy up" the issues to be submitted so as to simplify its deliberations. Such house-cleaning exercises in no way represent acquittals.

Yet another answer is that the termination of jeopardy on one count does not forestall continuing jeopardy on a related count in the course of a single trial. As Judge Eldridge explained in *Ward v. State, supra,* at 290 Md. 92, 427 A.2d 1008:

> "[I]n *Bynum v. State* [277 Md. 703, 357 A.2d 339 (1976) ] . . . the defendant was charged in one count with armed robbery and in another count with simple robbery based on the same acts. After the attachment of jeopardy, and without the defendant's consent, the State *nolle prossed* the simple robbery count. The trial continued on the armed robbery charge, and the defendant was convicted. In affirming, we held that even though the simple robbery charge was a lesser included offense of armed robbery, and even though the two offenses must be deemed the same under the required evidence test of *Blockburger v. United States,* . . . the *nolle prosequi* of one count did not operate as an acquittal of the underlying offense so as to preclude the continuation of the trial on the other count." (Citations omitted).

He went on to supply the reasoning behind such a rule of law:

> "The reason for our holding was that settled double jeopardy principles did not preclude the continuation of the same trial on a different count, as the defendant was not being 'twice put to trial.' . . . The holding in *Bynum* is in accord with the virtually unanimous view that a *nolle prosequi* or abandonment after jeopardy attaches of a greater or lesser included charge does not amount to an acquittal of the other charge deemed to be the same under the *Blockburger* test, and that the trial on the latter charge may continue." (Citation and footnote omitted).

*Id.* at 92–93, 427 A.2d 1008.

### The Remaining Contentions

The last two contentions are trivial. The appellant complains that Judge Steinberg erroneously refused to grant a

continuance to permit him to bring in a missing witness. On the third day of trial, the codefendant McNeill complained that one of his witnesses, Connie Bridges, had not appeared for trial that day. Initially, it was determined that no summons had ever been served upon Connie Bridges. It is furthermore unclear as to what, if any, proffer was made as to the testimony of Connie Bridges. At most, it seems that she could corroborate the testimony of another defense witness as to what McNeill was doing shortly before his arrest. Whatever McNeill moved for, the appellant "joined in." It does not appear, however, that McNeill ever explicitly requested a continuance. What is clear is that when it came time to rest their case without Connie Bridges having appeared, both defendants moved for a mistrial. Judge Steinberg denied the motion. Whatever happened, Judge Steinberg did not abuse his discretion in moving forward with the trial.

The appellant's final contention is that Judge Steinberg should not have received in evidence the calendar, notebook, and the address book taken from the appellant's person at the time of his arrest. Although he now raises a contention based upon evidence of "other crimes," it is clear that the only objection raised at trial and, therefore, preserved for appeal, was one based upon the grounds of irrelevance. In view of expert police testimony that the various notations and calculations related to drug trafficking, Judge Steinberg properly ruled that the evidence was relevant.

JUDGMENTS AFFIRMED;

COSTS TO BE PAID BY APPELLANT.