717 A.2d 393

**In re NAHIF A.**

**No. 1560, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 14, 1998.

194

Daniel H. Weiss, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore and Scott L. Rolle,

State's Attorney for Frederick County, Frederick, on the brief), for appellee.

Argued before MURPHY, C.J., HOLLANDER J., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

MARVIN H. SMITH, Judge (retired), Specially Assigned.

We shall here affirm the finding of delinquency by the Circuit Court for Frederick County in a proceeding pertaining to appellant, Nahif A. (Nahif).

Two juvenile delinquency petitions were filed against Nahif in that court. The first petition, in case number 9091, accused him of distribution of cocaine, possession of cocaine with intent to distribute, possession of cocaine, conspiracy to distribute cocaine, conspiracy to possess cocaine with intent to distribute, and conspiracy to possess cocaine. The second petition, in case number 9099, accused him of theft, disorderly conduct, and disturbing school activities.

The cases were consolidated for a joint adjudicatory hearing. Case number 9099 was heard first. At the close of that case, the trial judge found that Nahif had committed theft as set forth in the first count and had disturbed school activities as set forth in the third count. The court then went on to hear case number 9091. In that case, the court found that Nahif had distributed cocaine as set forth in count one and had conspired to possess cocaine with intent to distribute as set forth in count five.[1]

The court adjudicated Nahif delinquent as a result of the findings in both cases. At the subsequent disposition hearing, the court committed Nahif "to the care and custody of the

---

1. The court indicated that it would have found that Nahif conspired to distribute cocaine as set forth in count four, but it had inadvertently granted Nahif's motion for judgment of acquittal on count four when it had intended to grant the motion as to possession of cocaine as set forth in count three.

Frederick County Department of Juvenile Justice for placement at Fairbridge," a residential treatment facility.

In this appeal, Nahif argues, in essence, that:

I. The juvenile court's finding that he conspired to possess cocaine with intent to distribute was inconsistent with the finding that he did not conspire to possess cocaine, and was barred by the prohibition against double jeopardy,

II. The evidence was insufficient to support the juvenile court's findings that he disturbed school activities, committed theft, and conspired to possess cocaine with intent to distribute, and

III. The juvenile court abused its discretion by permitting the State to reopen its case during closing argument to establish his age.

## —Case Number 9099—

Case number 9099 stemmed from an altercation that occurred at Heather Ridge School, where Nahif was a student. The State presented evidence that Heather Ridge School is an "alternative school" for youngsters who are not "successful in their home schools for any number of reasons." These reasons include, but are not limited to, behavioral problems.

The State presented two witnesses: school support counselor Roger Dawson and assistant principal Perry Baker. Dawson testified that Heather Ridge School provided Nahif with a lunch each day. On March 14, 1997, a lunch was taken to him in the particular school room to which he was assigned. Without requesting permission to do so, Nahif took the lunch back to the cafeteria and informed a cafeteria worker that he wanted a different lunch. The cafeteria worker refused to make an exchange. Dawson, who had witnessed the interaction between Nahif and the worker, testified that he also told Nahif that he could not swap the lunches. Nahif nevertheless left his lunch on the counter and took a different lunch. Baker, the assistant principal, was called to the cafeteria. Baker asked Nahif if he had paid for the second lunch. Nahif answered in the negative and explained that the first lunch

had consisted of a pork sandwich and that it was against his religion to eat pork. Baker informed Nahif that the sandwich was actually made from turkey. He then asked Nahif to accompany him back to his office. Nahif did walk out of the cafeteria and into a hallway but, according to Baker, "there was a lot of disruption" at that point. Nahif "used lots of profanity in the hallway" and was "being loud, so that other students c[ould not] learn." The police were called to the scene but Nahif "continued to disrupt." Baker testified that Nahif "threaten[ed] both the staff and the police officers. Threaten[ed] to kill us." Dawson, who was present throughout the confrontation, confirmed that Nahif "became loud and started cursing," and that he "was not following staff requests."

Nahif testified on his own behalf in case number 9099. He explained that he could not eat the lunch he was given because it consisted of pork. Nahif acknowledged that it "wasn't all right" to take the second lunch because "I didn't ask no permission." He added, however, that he did not think he was stealing since he was entitled to a free lunch and he could not eat the lunch he was given.

—Case Number 9091—

Case number 9091 arose from a controlled drug transaction that occurred at about 8:30 in the evening on March 27, 1997. The state presented three witnesses: two police officers and a police informant. This time, Nahif presented no evidence in his defense.

Officer Gregory Stocksdale told the court that he arranged for the informant, Curtis Lee West, to make a controlled buy. The officer searched West, fitted him with a body wire, gave him $40 in marked bills, and instructed him to drive to All Saints' Street in Frederick to purchase a controlled dangerous substance. Stocksdale met with West after the buy and recovered two rocks of crack cocaine from him.

Curtis Lee West testified that, when he pulled onto All Saints' Street and stopped his car, one person approached the

passenger door and one person approached the driver's door. The person on the passenger side, who was later identified as Richard Thomas Spencer, opened the door and threw the drugs in. He then instructed West to give his money to the person at the driver's door. At trial, West identified Nahif as the person to whom he gave the $40.

Another police officer, T.A. Duhan, testified that he observed the entire transaction through binoculars. Officer Duhan stated that he saw West's car drive onto All Saints' Street and stop. He saw Spencer approach the passenger side of the car and Nahif approach the driver's side. Officer Duhan testified that he saw Spencer reach his hand into the car and saw West reach toward Spencer's hand. Spencer then gestured toward Nahif, and West handed money to Nahif. The officer radioed for an arrest team to arrest Nahif and Spencer. After the arrest, the $40 in marked bills were recovered from Spencer's person.

## I

### Inconsistent Verdicts and Double Jeopardy

Nahif points out that, before it determined that he conspired to possess cocaine with intent to distribute, the trial court granted his motion for judgment of acquittal as to conspiracy to possess cocaine. In granting the motion for judgment of acquittal, the trial judge stated that there was no evidence of a conspiracy to possess. In finding later that Nahif had conspired to possess cocaine with intent to distribute, however, the court stated that there *was* sufficient evidence "with regard to the conspiracy charges as to the distribution and the conspiracy to possess." Nahif argues that these findings were fatally inconsistent. In addition, he argues that the finding that he conspired to possess cocaine with intent to distribute was barred by double jeopardy principles.[2]

---

2. Presumably, Nahif is referring to the doctrine of collateral estoppel. "Collateral estoppel is embodied within the Fifth Amendment's guarantee against double jeopardy.... The doctrine of collateral estoppel

Neither of these arguments was raised in the court below. In fact, in moving for judgment of acquittal at the close of the case, after the trial judge had granted Nahif's motion as to conspiracy to possess cocaine, defense counsel told the court that the evidence "at best leaves us with the conspiracy to possess with intent to distribute." Counsel later reiterated that "the best the Court has, based on the information—or these charges—is the conspiracy to possess with intent to distribute." Under the circumstances, neither argument is preserved for appellate review. *See* Md. Rule 8–131(a); *Carbaugh v. State,* 294 Md. 323, 327 n. 3, 449 A.2d 1153, 1155 n. 3 (1982) ("[A] challenge to concurrent sentences on a greater offense and on a lesser included offense must be properly raised or it is deemed waived, regardless of the 'knowing and intelligent' standard"); *Hewitt v. State,* 242 Md. 111, 114, 218 A.2d 19, 21 (1966) (double jeopardy argument based on retrial not preserved for appeal since not raised below); *Bell v. State,* 220 Md. 75, 81, 150 A.2d 908, 912 (1959) (explaining in *dicta* that an argument that guilty verdicts for larceny and receiving stolen goods were inconsistent might have been waived since it was not raised below); *Acquah v. State,* 113 Md.App. 29, 42–43, 686 A.2d 690, 697 (1996) (argument that not guilty verdict for conspiracy to bribe was inconsistent with guilty verdict for conspiracy to gain illegal access to personal records by false pretenses, bribery, or theft was not raised below so not preserved); *In Re Darnell F.,* 71 Md.App. 584, 592, 526 A.2d 971, 975 (argument that court's order that juvenile pay restitution violated double jeopardy principles, in that restitution charge had been reinstated after being dismissed by court, not

provides that 'when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties....'" *State v. Woodson,* 338 Md. 322, 331, 658 A.2d 272, 277 (1995) (citations omitted). *See Pugh v. State,* 271 Md. 701, 707, 319 A.2d 542, 545 (1974) ("Once a trial judge intentionally renders a verdict of 'not guilty' on a criminal charge, the prohibition against double jeopardy does not permit him to change his mind").

See, also, the discussion by Judge Wilner for the Court in *Janes v. State,* 350 Md. 284, 295–97, 711 A.2d 1319, 1324–25 (1998).

raised below so not preserved), *cert. denied,* 311 Md. 144, 532 A.2d 1371 (1987); *Howell v. State,* 56 Md.App. 675, 678–82, 468 A.2d 688, 689–91 (1983) (argument that retrial constituted double jeopardy not raised below so not preserved), *cert. denied,* 299 Md. 426, 474 A.2d 218, *cert. denied,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984). Hence, the issue is not before us.

## II

### Sufficiency of the Evidence

Nahif next challenges the sufficiency of the evidence to support the findings that he disturbed school activities, committed theft, and conspired to possess cocaine with intent to distribute.

In *In re Timothy F.,* 343 Md. 371, 379–80, 681 A.2d 501, 505 (1996), Judge Bell explained for the Court of Appeals:

> Judging the weight and the credibility of witnesses and resolving conflicts in the evidence are matters entrusted to the sound discretion of the trier of fact. . . . When the trier of fact is the trial court, its judgment on the evidence will be set aside only if it is clearly erroneous. . . . Appellate review of the court's judgment on the evidence is limited to determining whether there is a sufficient evidentiary basis for the court's underlying factual findings. In a criminal case, the appropriate inquiry is not whether the reviewing court believes that the evidence established guilt beyond a reasonable doubt, but rather,
>
> > whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt
>
> . . . This same standard of review applies in juvenile delinquency cases. . . . In such cases, the delinquent act, like the criminal act, must be proven beyond a reasonable doubt.

*Id.* at 379–80, 681 A.2d 501 (citations omitted; emphasis in original.). *See also* Md.Code (1974, 1995 Repl.Vol.), § 3–819(b)(1) of the Courts and Judicial Proceedings Article ("Before a child is adjudicated delinquent, the allegations in the petition that the child has committed a delinquent act must be proved beyond a reasonable doubt").

### —Disturbing School Activities—

Nahif was found to have disturbed school activities in violation of Code (1978), § 26–101(a) of the Education Article, which provides: "A person may not willfully disturb or otherwise willfully prevent the orderly conduct of the activities, administration, or classes of any institution of elementary, secondary, or higher education." [3]

Nahif's challenge to the sufficiency of the evidence to support the finding that he violated the statute is two-fold. He first contends that the conduct of which he was accused "was not what § 26–101 was intended to prohibit." He further contends that, even if the statute were applicable, the State's evidence failed to establish that he actually disrupted any classes or the administration of the school.

In support of his argument that the statute is not applicable to the instant case, Nahif asserts that "the predecessor statutes to § 26–101(a) ... were passed during the height of the Viet Nam War protests." *See* former Code (1957, 1969 Repl. Vol.), Art. 77, § 96 (enacted by 1969 Laws of Maryland chapter 405, § 1) and former Code (1957, 1976 Repl.Vol.), Art. 27, § 123A (enacted by 1970 Laws of Maryland chapter 726). Without citation to any authority, he argues that the predecessor statutes, and hence § 26–101, "were directed towards activities such as sit-ins, protest marches and civil disobedience designed specifically to disrupt the functioning of a school." Nahif concludes that the statute was not intended to

---

**3.** Under § 26–101(d), "Any person who violates any provision of subsection (a) or (b) of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000, imprisonment not exceeding 6 months, or both."

punish misbehavior such as that alleged in the instant case. He points out that "Heather Ridge is the only school in [Frederick] County for children with behavioral problems" and reasons that the statute could not have been intended "to punish criminally the acting out behavior of students in the one public school equipped to deal with children with behavioral problems."

"[T]he cardinal rule of construction of a statute is to effectuate the actual intention of the legislature." *Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A.2d 347, 352 (1977).

When we seek to ascertain and effectuate legislative intent, "we look first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." ... In doing so, we give the language of the statute its natural and ordinary significance, bearing in mind the statutory aim and objective.... Moreover, we approach the analysis from a "commonsensical," rather than a technical perspective, ... always seeking to avoid giving a strained interpretation or one that reaches an absurd result.... We must assume that the words of the statute defining the crime ... have the meaning naturally given them in ordinary usage, in the absence of anything to indicate contrary intent; there being no room for construction, if the language is plain and unambiguous....

*Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 485–86 (1992) (citations omitted).

The language of § 26–101(a) is plain and unambiguous: "A person may not willfully disturb or otherwise willfully prevent the orderly conduct of the activities, administration, or classes of any institution of elementary, secondary, or higher education." The prohibition is in no way limited, as Nahif suggests, to "sit-ins, protest marches and [acts of] civil disobedience designed specifically to disrupt the functioning of a school." Nor does the prohibition exclude students with "behavioral problems." The interpretation urged by Nahif would

give students carte blanche to disrupt their classrooms and schools by any means other than sit-ins, protest marches, and acts of civil disobedience without fear of legal recourse.[4]

The State presented evidence that Nahif engaged in a heated verbal altercation with school officials. The altercation took place in a school hallway near classrooms. Nahif would not follow directions given by the school officials, and the police had to be called to subdue him. When the police arrived, Nahif continued to shout and curse at the school officials and threatened to kill both the school officials and the police. The State furnished ample evidence to convince a rational trier of fact, beyond a reasonable doubt, that Nahif had "willfully disturb[ed] or otherwise willfully prevent[ed] the orderly conduct of the activities, administration, or classes" at Heather Ridge School. *Id.*[5]

## —Theft—

Nahif acknowledges that he was denied permission to exchange his lunch for a different lunch. He reasons, howev-

---

4. Nahif argued below that § 26–101 did not apply to the situation at hand and thereby preserved this argument for appellate review. It is interesting to note, however, that Nahif successfully moved for judgment of acquittal on the count for disorderly conduct under Code (1957, 1996 Repl.Vol.), Art. 27, § 123, on the ground that the legislature had provided "a specific charge" for the alleged conduct with § 26–101.

5. Nahif asserts that "[s]uch misbehavior as talking in class, throwing spitballs or running in the halls may disrupt or disturb the activities of the school, but obviously are not what the statute intended to prohibit." He thus vaguely suggests that § 26–101 is overly broad or vague. The argument was not made below and therefore is not properly before this Court. *See* Md. Rule 8–131(a). In any event, even assuming *arguendo* that talking in class, throwing spitballs, and running in the halls are activities that § 26–101 does not or could not lawfully address, the acts committed by Nahif were far more egregious and were clearly within the statute's prohibition. It is well-established that "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

er, that because he was entitled to a free school lunch and because he believed that the lunch he was given contained pork, his act of "merely substituting a lunch he could eat for one that he could not" was not theft.

Under Maryland law,

> A person commits the offense of theft when he willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized over property of the owner, and:

> (1) Has the purpose of depriving the owner of the property. . . .

Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 27, § 342(a).[6] Section 343(c) provides, in pertinent part:

> It is a defense to the offense of theft that:

> (1) The defendant acted under a good faith claim of right to the property involved;

> (2) The defendant acted in the honest belief that he had the right to obtain or exert control over the property as he did. . . .

While there is no dispute that Nahif was entitled to a school lunch, and while the trial court accepted that Nahif believed—albeit apparently mistakenly—that the lunch with which he was provided contained pork, the evidence was not such that it required the trier of fact to accept a defense of good faith claim or honest belief of right. There is no dispute that the free lunches provided to students such as Nahif were different than the lunches sold in the cafeteria. Dawson testified that both he and the cafeteria worker told Nahif that he could not trade lunches. Baker, too, indicated that he told Nahif that he could not take a different lunch. Most significantly, Nahif himself testified that he took the second lunch after the

---

6. Under § 342(f)(2), "A person convicted of theft where the property or services that was the subject of the theft has a value of less than $300 is guilty of a misdemeanor and shall restore the property taken to the owner or pay him the value of the property or services, and be fined not more than $500, or be imprisoned for not more than 18 months, or be both fined and imprisoned in the discretion of the court. . . . "

cafeteria worker told him not to do so. Nahif acknowledged that "[i]t wasn't all right to do" since he "didn't ask no permission." Thus, the evidence established that Nahif was well aware that he was not entitled to trade his lunch for a different lunch. A rational trier of fact could have reasonably determined that Nahif willfully or knowingly obtained unauthorized control over the second lunch with the purpose of depriving the school of the lunch.

## —Conspiracy to Possess Cocaine with Intent to Distribute—

Nahif asserts that "there was no evidence of an agreement that [he] ever exercise any control over the cocaine...." He posits that "[t]he evidence showed Nahif's function was merely to act as cashier." Nahif concedes that the State presented circumstantial evidence of a conspiracy to distribute cocaine. He argues that it did not present evidence of a conspiracy to possess the cocaine, which was necessary for the finding that he conspired to possess the cocaine with intent to distribute. *See generally Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *State v. Lancaster,* 332 Md. 385, 391–95, 631 A.2d 453, 456–58 (1993) (discussing the required evidence test); *Woodson,* 338 Md. at 329, 658 A.2d at 276 (simple possession and possession with intent to distribute "are deemed the same offense for double jeopardy purposes"); *United States v. Vaandering,* 50 F.3d 696, 703 (9th Cir.1995) ("[T]he offense of conspiracy to possess methamphetamine is a lesser-included offense of conspiracy to possess methamphetamine with intent to distribute").

There is considerable question as to whether this argument is properly preserved for appellate review. Although defense counsel initially argued in moving for judgment of acquittal below that there was no evidence of a conspiracy, he later conceded that the evidence "at best" showed a conspiracy to possess cocaine with intent to distribute. *See generally* Md. Rule 4–324(a). In any event, the argument is without merit.

Criminal conspiracy is defined as

the combination of two or more people to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The gist of conspiracy is the unlawful agreement, which need not be spoken or formal so long as there is a meeting of the minds reflecting a unity of purpose and design. The crime is complete when the unlawful agreement is made; no overt act in furtherance of the agreement is necessary.

*Monoker v. State*, 321 Md. 214, 221, 582 A.2d 525, 528 (1990).

 Possession means "the exercise of actual or constructive dominion or control over a thing by one or more persons." Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 27, § 277(s). As the Court of Appeals made clear in *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041, 1047 (1988), "[t]he accused, in order to be found guilty, must know of both the presence and the general or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." In determining whether the evidence supported a finding of constructive possession, appellate courts look to:

1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Folk v. State*, 11 Md.App. 508, 518, 275 A.2d 184, 189 (1971).

To reiterate, both West and Officer Duhan testified that, when West stopped his car on All Saints' Street, Nahif approached the driver's side and Spencer approached the passenger side. Spencer opened the passenger door and tossed in some crack cocaine. He then directed West to pay Nahif. West handed Nahif $40 in marked bills. Minutes later, when Nahif and Spencer were arrested, the marked bills were found on Spencer's person.

On this evidence, a rational trier of fact could reasonably conclude that Nahif was in close proximity to the cocaine, was aware that Spencer had the cocaine and was giving it to West in exchange for money, and was participating with Spencer in the enterprise involving the cocaine. The instant situation is strikingly similar to that with which this Court was faced in *Jackson v. State*, 82 Md.App. 438, 572 A.2d 567 (1990), *aff'd*, 322 Md. 117, 586 A.2d 6 (1991). Jackson challenged the sufficiency of the evidence to support his convictions for possession of cocaine with intent to distribute, conspiracy to distribute cocaine, and conspiracy to possess cocaine with intent to distribute. In affirming all three convictions, this Court explained that Jackson's arrest was the result of a drug surveillance operation, and recounted the evidence against him as follows:

> Police attention was focused on the appellant and an ultimate codefendant named Marshall McNeill. The pattern that repeated itself on several occasions was that, as the appellant and McNeill stood on the corner conversing, an individual, exhibiting the physical characteristics of a drug addict, approached the twosome. The suspected customer would first converse with McNeill and then hand over some currency to the appellant. While the appellant remained on the corner with the customer, McNeill would walk to a nearby open lot where he would remove small objects from a plastic bag. McNeill would return to the corner and turn over a small baggie containing a white substance to the "customer," who would then leave. McNeill and the appellant would resume conversation while awaiting the arrival of the next customer.

*Id.* at 446, 572 A.2d at 571.

Like Nahif in the instant case, Jackson never actually handled the contraband. In affirming Jackson's convictions for possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute, this court nevertheless implicitly determined that Jackson conspired to—and did—constructively possess the cocaine. As in *Jack-*

*son,* the evidence in the instant case was sufficient to establish that Nahif conspired to constructively possess the cocaine.

## III

### Reopening of State's Case

After the State had presented closing argument in case number 9091, defense counsel moved to dismiss the case on the ground that the State had failed to establish that Nahif was a juvenile and that the juvenile court, therefore, had subject matter jurisdiction. In response, the State requested permission to reopen its case to establish Nahif's date of birth.[7] The court granted the State's request, and the State called two witnesses who testified that Nahif was born on September 3, 1983. Afterward, defense counsel resumed his closing argument.

Nahif now contends that the trial court erred by permitting the State to reopen its case. He argues that the State's failure "to prove an essential aspect of [its] case was not good cause for the court to permit [it] to reopen the case." He concludes that his "right to a fair trial was compromised...."[8]

Nahif's argument rests on the faulty premise that the State was required to present evidence that he was a juvenile. In fact, there was no such requirement. In accordance with Md. Rule 11–103, the State set forth Nahif's date of birth in the delinquency petition. "When a delinquency petition has been filed, the court, sitting as a juvenile court, has 'exclusive jurisdiction' over the child...." *Parojinog v. State,* 282 Md.

---

**7.** The State first argued unsuccessfully that it did establish that Nahif was a juvenile, in that Officer Duhan referred to Nahif in his testimony as a "juvenile," and it was apparent from looking at Nahif that he was a minor.

**8.** In moving to dismiss case number 9091, Nahif informed the trial court that the State had failed to present evidence that he was a juvenile in case number 9099 as well. He did not argue below that case number 9099 should be dismissed and does not make such an argument on appeal.

256, 260, 384 A.2d 86, 88 (1978) (citing § 3–804 of the Courts Article). As a result of the delinquency petition, the court properly exercised jurisdiction over the case.

 As a general rule,

Without reference to the nature of the jurisdiction of the court involved, a prima facie presumption of jurisdiction arises from the exercise of it. It is presumed that jurisdiction over the subject matter and parties has been rightfully acquired and exercised.

More particularly, the jurisdiction of a court of general jurisdiction is presumed, unless the contrary is made to appear; and every presumption not inconsistent with the record is to be indulged in favor of such jurisdiction, at least when the allegations of the petition show jurisdiction.

. . . .

The presumption of jurisdiction of courts of general jurisdiction is applied in cases where such courts have exercised special statutory powers. The presumption arises where they exercise such special statutory powers by the usual common-law and chancery proceedings and practice. Also, it arises where such courts enforce statutory causes of action of which they have cognizance in the exercise of their general jurisdiction over the subject matter of such actions, rather than in the exercise of the special jurisdiction conferred on them by statute.

21 C.J.S. *Courts* § 74 at 91–92 (1990) (footnotes omitted). *Cf. Staley v. Staley*, 251 Md. 701, 705, 248 A.2d 655, 658 (1968) ("The burden of proof in establishing lack of jurisdiction because of domicil[e] is upon the person alleging it"). *See* Md. Rule 11–107(a) (indicating that a respondent *may* file a pleading denying or admitting all or any facts in a juvenile petition or raising a preliminary objection, and indicating that if the respondent does not file such a pleading all allegations in the petition are deemed to be denied).

In short, once the State set forth Nahif's age in the delinquency petition and the juvenile court exercised jurisdiction over the case, there was a presumption that jurisdiction was

proper. Nahif had the burden of rebutting that presumption. He did absolutely nothing to shoulder that burden—he simply attempted to shift the burden to the State. The juvenile court could have simply denied Nahif's motion to dismiss the case without further ado. That the court instead permitted the State to reopen its case to present evidence that was wholly unnecessary is of no discernible consequence.

Even assuming *arguendo* that the State was required to present evidence that Nahif was a juvenile, the court did not err by permitting the State to reopen its case. "Generally, trial judges have broad discretion to reopen a case to receive additional evidence." *Dyson v. State*, 328 Md. 490, 500, 615 A.2d 1182, 1186 (1992). In *Dyson*, the Court of Appeals recognized that, under certain narrow circumstances, a court may permit the State to reopen its case, in a jury trial, even after the jury has begun deliberations. *Id.* at 500–04, 615 A.2d at 1186–89. The Court explained that, in exercising its discretion, the lower court should consider:

> Whether good cause is shown; whether the new evidence is significant; whether the jury would be likely to give undue emphasis, prejudicing the party against whom it is offered; whether the evidence is controversial in nature; and, whether the reopening is at the request of the jury or a party.

*Id.* at 502, 615 A.2d at 1188 (citation omitted).

The establishment of Nahif's age was a mere perfunctory matter. Nahif has never disputed that he was a juvenile at all relevant times and, indeed, is still a juvenile. There was no danger that the evidence regarding Nahif's date of birth would unfairly surprise him, nor was there any risk that the court would give the evidence undue weight in determining whether Nahif committed the crimes alleged. None of the factors that might prevent a court from exercising its discretion to reopen a case were present.

**JUDGMENTS AFFIRMED;**

**APPELLANT TO PAY THE COSTS.**