WILLIAM E. DENNIS *v.* BALTIMORE TRANSIT CO.

[No. 74, October Term, 1947.]

612

Decided January 16, 1948.

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Louis S. Ashman* for the appellant.

*Eben J. L. Cross,* with whom was *Philip S. Ball* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

William E. Dennis, appellant, a colored man, 48 years old, alleged in this suit for damages that, while he was a passenger on a street car operated by the Baltimore Transit Company, the conductor unjustifiably and maliciously ordered his arrest on a false criminal charge.

On Sunday afternoon, April 28, 1946, appellant, a clerk employed at the Baltimore post office, entered the rear door of a Fayette street car at Calvert Street. He and Frank Sewell, colored, aged 33, also an employee at the post office, were the last of about ten people who boarded the car at that intersection. The car was not equipped

with a fare box, but the fares were taken by the conductor when the passengers entered. Sewell claimed that he handed the conductor, Howard Duff, a two-trip slip (good for a fare upon payment of 5 cents) and a quarter of a dollar. He waited for a few moments and when the conductor asked him what he was waiting for, he replied: "For my change." Appellant then interposed: "He is right. He gave you a quarter and a two-trip slip." Thereupon the conductor said: "What have you got to do with it? You two guys are slick guys. I have seen your kind before." Appellant then said: "I saw him give you a quarter. You have it in your hand." The conductor told the men to sit down, and after the car had gone one block west of the post office, each took a seat, but near St. Paul Street appellant went back to the conductor and insisted: "Why don't you give the man his money?" The conductor told him to sit down, and he would take care of it as soon as the passengers were seated. It is admitted that Sewell got his 20 cents change. Appellant claims that he did not cause any disturbance in the car. However, he admits that he said to the conductor: "What right have you to order us around like criminals? We are respectable citizens."

The climax of the dispute came after the car stopped at Liberty Street. The conductor requested the motorman to wait until he could get a policeman. About five minutes later, when he returned with an officer, the latter ordered the two men out of the car, and walked with them to the call box on Hanover Street. The two men protested that they were not guilty of any offense. The policeman decided to wait until the street car returned from the loop to inquire what charge the conductor wanted to make. When the car came back to Liberty Street, he asked the conductor what his charge was, and he replied: "Disorderly conduct." By that time the police car had arrived, and the two accused men were taken in the police car to the Central Police Station. After their cases were listed on the docket,

each was assigned to a cell for the night, but each was informed that he could be released pending hearing before the magistrate by depositing $26.50. Appellant had the cash in his pocket, and Sewell borrowed the money. They tendered the collateral and were then released from custody. On the following morning the two men appeared before the police magistrate. Conductor Duff also appeared at the hearing as prosecuting witness, but the cases were dismissed, and the collateral was returned.

Appellant and Sewell thereupon instituted suits against the transit company. The suits were tried together before the Superior Court of Baltimore City, and the trial judge gave a verdict in favor of each plaintiff against the company for the sum of $500. The judge stated that he awarded these amounts as compensatory damages, and made no allowance for punitive damages. There was no appeal from the judgment entered in favor of Sewell. Appellant contends (1) that the trial judge erred in refusing to award him punitive damages, and (2) that $500 does not fully compensate him for his actual injuries.

It is an established principle of the common law that a passenger on a common carrier is entitled to protection against the misconduct of the carrier's servants. Their misconduct, while transacting the carrier's business and acting within the general scope of their employment, is imputed to the carrier which constituted them as agents for the performance of its contract with the passengers. The rule is founded upon public policy and convenience. Every person is bound to use due care in the conduct of his business, and if his business is committed to an agent or servant, the obligation is not changed. The principle is peculiarly applicable to the relation between common carrier and passengers, for a carrier is bound to protect as far as practicable its passengers from violence committed by co-passengers and strangers, and it also undertakes to protect them absolutely against misconduct or negligence of its own

servants engaged in the execution of the contract. *New Jersey Steamboat Co. v. Brockett,* 121 U. S. 637, 7 S. Ct. 1039, 30 L. Ed. 1049; *New York, P. & N. R. Co. v. Waldron,* 116 Md. 441, 82 A. 709, 39 L. R. A., N. S. 502. It is also well settled that after a person boards a train or street car where passengers are regularly received, and the relation of carrier and passenger is established by the payment and acceptance of the fare, he cannot be arbitrarily ejected when he is not guilty of any misconduct. *Indianapolis Traction & Terminal Co. v. Lockman,* 49 Ind. App. 143, 96 N. E. 970.

On the other hand, a common carrier has the right to exclude from any of its cars a passenger who is offensive or annoying to other passengers, or whose condition or conduct is such as reasonably to warrant the anticipation of annoyance or disturbance. *Hudson v. Lynn & B. R. Co.,* 178 Mass. 64, 59 N. E. 647. An objectionable person may be one who disturbs other passengers by unseemly or insulting language, or one who is unruly or boisterous and interferes with the carrier's business. *Spalt v. Eaton,* 118 N. J. L. 327, 192 A. 576; *Sorenson v. Lincoln Traction Co.,* 94 Neb. 91, 142 N. W. 702. If a passenger's condition or conduct is liable to cause danger or serious annoyance to other passengers, it is not only the right but the duty of the carrier to eject him, even though he has paid his fare. *Falzarano v. Delaware, L. & W. R. Co.,* 119 N. J. L. 76, 194 A. 75; *Casteel v. American Airways,* 261 Ky. 818, 88 S. W. 2d 976; *Leonard v. St. Louis Transit Co.,* 115 Mo. App. 349, 91 S. W. 452. Moreover, when the misconduct of a passenger is such as to warrant his ejection, the conductor may call a police officer to eject him, and the officer may use necessary force to eject.

It is further held that where a conductor, due to some error of judgment, wrongfully ejects a passenger, the carrier will be liable for the tort committed, regardless of the conductor's motive, his good motive being available only to defeat a recovery of punitive damages. If a passenger is not in any way at fault, the carrier will also be liable if he is arrested upon the request of the

conductor while engaged in the performance of his prescribed duties. In expelling a passenger from a car or in requesting that he be arrested, the conductor acts at his peril and, if the expulsion or arrest is wrongful, the fact that the conductor acted under a misapprehension in supposing that he had been guilty of misconduct can afford no excuse to the carrier for the tort committed, but the passenger may recover such damages as the jury may consider actual compensation for the unlawful invasion of his rights and the injury to his person and feelings. *Baltimore & O. R. Co. v. Cain,* 81 Md. 87, 105, 31 A. 801, 28 L. R. A. 688; *New York, P. & N. R. Co. v. Waldron,* 116 Md. 441, 82 A. 709, 39 L. R. A., N. S., 502.

We further hold in this State that if an injury has been inflicted maliciously or wantonly, the jury are not restricted to an award of compensatory damages, but may award in addition thereto such punitive damages as the circumstances of the case may warrant as a punishment for the wrong done and as an example to others. *Sloan v. Edwards,* 61 Md. 89, 100; *Bernheimer Bros. v. Becker,* 102 Md. 250, 256, 62 A. 526, 3 L. R. A., N. S., 221, 111 Am. St. Rep. 356. Thus punitive damages may be awarded to a passenger where he was ejected maliciously and wantonly, if the conductor acted within the general scope of his employment. Likewise, if an arrest of a passenger is made upon the conductor's request with the primary object of injuring and oppressing him, the jury may go beyond the rule of compensation, and award such additional damages as they may deem proper. *Bernheimer Bros. v. Becker,* 102 Md. 250, 62 A. 526, 3 L. R. A., N. S., 221, 111 Am. St. Rep. 356. As we stated in *Heinze v. Murphy,* 180 Md. 423, 24 A. 2d 917, deliberation and unnecessary violence do not necessarily form the basis for allowance of punitive damages. The word "malice," as used in the rule for imposition of punitive damages, signifies that the defendant was influenced by hatred and spite and that he indulged in deliberate and wilful mischief to injure the plaintiff. *Philadelphia, W. & B. R. Co. v. Quigley,* 21 How. 202, 16

L. Ed. 73, 77. The word "wanton" means characterized by extreme recklessness and utter disregard for the rights of others. *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 602, 20 A. 2d 485. We specifically hold that, in a suit for damages brought by a passenger for false arrest made upon request of the conductor, it must be shown by the plaintiff in order to recover punitive damages that the conductor not only acted wrongfully but without just cause or excuse, and with the evil motive to injure and oppress, or at least with a reckless disregard of the rights of the person injured. *Smith v. Philadelphia, W. & B. R. Co.,* 87 Md. 48, 38 A. 1072; *Fotheringham v. Adams Express Co.,* 36 F. 252, 1 L. R. A. 474. Where the jury determine in a suit for false arrest that the arrest, even though unjustifiable, was requested in the honest assertion of a supposed right while in the discharge of duty, and was not from malice, punitive damages should not be awarded. *Philadelphia, W. & B. R. Co. v. Hoeflich,* 62 Md. 300, 307, 50 Am. Rep. 223.

The question whether the defendant in a suit for false arrest was motivated by malice is generally a question for the jury. *Arye v. Dickstein,* 337 Pa. 471, 12 A. 2d 19; *Atkinson v. Dixie Greyhound Lines,* 5 Cir., 143 F. 2d 477. In the Court below the judge, sitting as a jury, after hearing the witnesses, decided that the conductor did not act maliciously or wantonly, and therefore did not award punitive damages. When a proceeding at law has been tried upon the facts by the Court, an appeal from the judgment may be taken according to the practice in equity, and the Court of Appeals may review upon both the law and the evidence. However, the judgment will not be set aside on the evidence, unless clearly erroneous. Rules of Practice and Procedure, pt. 3, subd. 3, rule 9 (c). In the instant case Conductor Duff testified that plaintiffs were so talkative and annoying that they interfered with the handling of other passengers. He asserted that he warned them that if they did not keep quiet and stop disturbing him while he was working, he would have them arrested. Nevertheless, he said, they continued to interfere with the passengers who

boarded the car at St. Paul Street and again at Charles Street. When the rear of the car became congested, the conductor warned Sewell that he "had better sit down." While appellant denied at the trial that any of the passengers were disturbed, the evidence of the altercation between the conductor and the two colored men is sufficient to sustain a finding that he brought the criminal charge against them during the strain of a busy hour in the honest assertion of a supposed right and duty, rather than from malice. Unquestionably it is the duty of a conductor on a street car to collect the fares as expeditiously as possible so that the transit company's schedule will be maintained for the convenience of the public. The conductor swore positively that plaintiff threatened him with the statement: "Who is afraid of you? I am not afraid of anything you can do." This Court has held that the jury, in deciding whether punitive damages should be awarded, should take into consideration the weaknesses of human nature that subject a man to uncontrollable influences when under great excitement superinduced by insult or threats. *Gaither v. Blowers*, 11 Md. 536, 552. Whether or not Sewell actually did hand to the conductor a quarter, and whether or not the conductor was as courteous to the passengers as he might have been, we are unwilling to declare that the trial Court was clearly wrong in its finding.

Finally, on the contention of appellant that the verdict of $500 was insufficient to compensate him for his actual injuries, he testified: (1) that the arrest frightened him so profoundly that he felt unable to attend church that evening, and took a dose of Nervine to sooth his nerves; (2) that he paid his attorney $25 to defend him the next day before the magistrate; and (3) that he was humiliated by the occurrence and had to make explanations to his friends. However, he admitted that the arrest did not affect his clerical position or his standing in the church. In our opinion he failed to show that the judgment was clearly erroneous.

*Judgment affirmed, with costs.*