907 A.2d 158

**In re ANTOINE M.**

**No. 120, Sept. Term, 2003.**

Court of Appeals of Maryland.

Sept. 14, 2006.

Allison E. Pierce, Assistant Public Defender (Stephen E. Harris, Public Defender, and Julia Doyle Bernhardt, Assistant Public Defender, on brief), Baltimore, MD, for Petitioner.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, MD, for Respondent.

Argued before BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

This case presents the procedural issue of whether Maryland Rule 4–324(a) has any application to juvenile delinquency trials.[1] The case also presents substantive issues concerning the requisite *mens rea* under the Maryland statute prohibiting "wanton trespass upon private land."[2]

---

1. Maryland Rule 4–324(a) states as follows:
 "**Rule 4–324. Motion for judgment of acquittal.**
 "(a) **Generally.** A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case."
 ＊ ＊ ＊
2. Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27, §§ 576 and 577, which was in effect when the alleged delinquent act of "wanton trespass" occurred in the present case, provides in pertinent part as follows:
 **§ 576. Definitions.**
 (a) *In general.* In this subheading the following words have the meanings indicated.
 ＊ ＊ ＊
 (d) *Wanton.* "Wanton" retains its judicially determined meaning.
 **§ 577. Wanton trespass upon private land or vessel; legislation by Baltimore City prohibiting denial of accommodations, etc., by public places.**

## I.

Antoine M., who was 16 years old, was charged, by a juvenile petition filed in the Circuit Court for Washington County, with trespass and malicious destruction of property. The juvenile charges were based upon an incident which occurred on August 26, 2002. On that date, Antoine M. allegedly trespassed upon property owned by Jillian and Jerry Keene in Hagerstown, Maryland, and used by the Keene

---

(a) *Trespassing.*

\* \* \*

(2)(i) A person may not remain on, enter on, or cross over any land, premises, or private property . . . after having been duly notified by the owner or owner's agent not to do so.

\* \* \*

(iii) It is intended that this paragraph is only to prohibit any wanton entry and may not be construed to apply to the entry on or crossing over any land when the entry or crossing is done under a bona fide claim or right or ownership.

The above provisions were re-codified by Ch. 26 of the Acts of 2002, Maryland Code (2002), § 6–403 of the Criminal Law Article, effective October 1, 2002. The phrase "bona fide claim of right" in Art. 27, § 577, was replaced by the phrase "good faith claim of right" in § 6–403. In addition, the "good faith claim of right" language and the "wanton entry" language were placed in different subsections. According to the Revisor's Note, no "substantive change" was intended by the re-codification. Section 6–403 provides as follows:

**§ 6–403. Wanton trespass on private property.**

(a) *Prohibited—Entering and crossing property.* A person may not enter or cross over private property or board the boat or other marine vessel of another, after having been notified by the owner or the owner's agent not to do so, unless entering or crossing under a good faith claim or right or ownership.

(b) *Same—Remaining on property.* A person may not remain on private property including the boat or other marine vessel of another, after having been notified by the owner or the owner's agent not to do so.

(c) *Penalty.* A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 90 days or a fine not exceeding $500 or both.

(d) *Construction of section.* This section prohibits only wanton entry on private property.

(e) *Applicability to housing projects.* This section also applies to property that is used as a housing project and operated by a housing authority or State public body, as those terms are defined in Article 44A of the Code, if an authorized agent of the housing authority or State public body gives the required notice specified in subsection (a) or (b) of this section.

family as their residence. The alleged trespass occurred two months after Antoine M. was notified in a writing that he was not to come upon the property owned by the Keenes for any reason, and that, if he did so, charges would be filed against him. The notice was delivered to him by a police officer of the Hagerstown Police Department.

At the juvenile delinquency hearing on the charges, the State presented Mrs. Keene's testimony regarding the trespass. Mrs. Keene testified that she wrote a no-trespassing letter in June 2002, informing Antoine M. that he was not welcome on the property owned by the Keenes and that, if he came upon the property, she intended to file charges. She stated that, after that letter was delivered to Antoine M., he continued to come upon the Keene property. Mrs. Keene testified that Antoine M. was never given permission to come upon the property by her or Mr. Keene and that they did everything in their power to discourage this behavior. Mrs. Keene testified that on August 26, 2002, the date of the alleged trespass, she had no knowledge of anyone in her home giving Antoine M. permission to be on the property. Mrs. Keene stated that, from the date that the no-trespassing letter was issued to Antoine M. until the date of the alleged trespass, Antoine M. was at the Keene home on numerous occasions. At one point in her testimony she indicated that Antoine M. was in the Keene home "everyday," stating, "he's always there." She estimated that during the summer of 2002 he was on the property on approximately 15 to 20 occasions. Mrs. Keene further testified that she was unsure of a possible dating relationship between her daughter and Antoine M., but that, to the best of her knowledge, her daughter had not invited Antoine M. into the home on August 26, 2002.

At the close of the State's case, the defendant made a motion for judgment of acquittal on both the trespassing charge and the destruction of property charge, stating:

"[DEFENSE COUNSEL]: I make a motion for judgment of acquittal based on the, the State's failure to, uh, make a prima facie case at this time.

[COURT]: All right, what's ... as to the destruction of property, I think it's granted.

[DEFENSE COUNSEL]: Thank you, your Honor.

[COURT]: How about, I want to hear your argument on trespass, what ...

\* \* \*

[DEFENSE COUNSEL]: The State has failed to produce facts sufficient to carry its burden at this time."

\* \* \*

Thereafter, the trial court denied the defendant's motion for acquittal on the trespassing charge.

During the defendant's case, Antoine M. testified that he did not trespass upon the Keene's property but was invited by the Keene's 15 year-old daughter, whom he was dating at the time of the alleged trespass. Antoine M. testified that, from the time he received the no-trespassing letter in June 2002 until the date of the alleged trespass in August 2002, he had been on the Keene's property on several occasions and that Mrs. Keene had invited him into the home on at least one of those occasions and had served him dinner. Antoine M. further testified that, when he would visit the Keene home, he would knock on the door and Mrs. Keene would either invite him into the home or ask him to wait on the porch while she went to get her daughter.

Following Antoine M.'s testimony, the defense rested its case. The State then called Mr. Keene as a rebuttal witness. Mr. Keene testified that he was aware of the letter written by his wife in June 2002 notifying Antoine M. that he was not welcome on the Keene property. Mr. Keene testified that, following the delivery of that letter, Antoine M. was never told that he could come upon the Keene's property. Mr. Keene stated that his problem with Antoine M. was that he would not leave the property when asked and that on one occasion the Keenes threatened him with a shotgun in order to get him to leave. Mr. Keene further testified, however, that Antoine M.

was "made welcome" at the Keene home on several occasions after the issuance of the letter, but that he did not intend the "welcome" to mean that Antoine M. had permission to come upon the property. When asked by defense counsel, "[w]ere there times after June when Antoine was made welcome in your home?" Mr. Keene responded: "Yes sir, I'll have to say there were."

When asked by the court to clarify what he meant by "made welcome," Mr. Keene explained:

"Well, we, he refuses to leave. He's very obsessed, and I've taken him, offered to take him home many nights. And, uh, sometimes I have taken him home. And, some nights I would say, 'Antoine, let me drive you home,' and he would say, 'No, I've got a place to stay,' but, basically, he'd be staying around the periphery of the property all night, looking for an opportunity to come in."

\* \* \*

"Made welcome in the sense that he wasn't abused. He was never made welcome in the sense, 'Yeah, you have permission to be here,' because we always wanted him to get it in his head that he needed to stay away, and we could never get that in his head. And, quite literally, it was do something bad to him, or know that he was gonna be there, and, you know, I, we threatened to use the shotgun on him. That's, you know, we didn't want to kill the young man. He's still alive, so obviously we didn't use the shotgun."

At the close of all the evidence, the defendant did not renew his motion for judgment of acquittal on the trespassing charge. The trial court then concluded that Antoine M. did trespass upon the Keenes' property and, therefore, was delinquent. The trial judge's entire finding in this regard was as follows:

"I, I have no difficulty concluding, based upon the evidence, that the owners of the property, Mr. and Mrs. Keene, the property known as 39 Broadway, they, as lawful owners, provided a no-trespass notice. It was received in approxi-

mately June 2002, and on August 26, 2002, Mr. M. was there, not as an invited guest, but simply because he showed up. Perhaps he was given permission by the daughter. I don't think she has the authority when the legal owners have notified a person that their property, their private property is off limits, that ... cannot be countermanded by a teenage daughter. And, so he was notified, knew what the deal was, and decided to enter the property anyway. I do not find that after delivery of the letter that he was there as an invited guest, which would, essentially, knock out, or countermand the written letter in June of 2002.

"Therefore, I find beyond a reasonable doubt, he has committed the act of trespass."

After issuing its decision, the trial court ordered that Antoine M. be placed in his mother's home under house arrest until the disposition hearing. At the disposition hearing, Antoine M. was committed to the Department of Juvenile Justice for foster care placement.

Antoine M. appealed to the Court of Special Appeals, which, in an unreported opinion, affirmed the judgment of the Circuit Court. The Court of Special Appeals, applying Maryland Rule 4–324(a), held that Antoine M. was required to make a motion for judgment of acquittal at the close of all the evidence. Because Antoine M. failed to do so, the intermediate appellate court held that he lost his right to argue on appeal that the evidence was insufficient. The Court of Special Appeals stated:

"Maryland Rule 4–324(a) provides: 'A defendant may move for judgment of acquittal ... at the close of the evidence offered by the State and in a jury trial, at the close of all the evidence.' The Rule further provides that '[t]he defendant shall state with particularity all reasons why the motion should be granted.' *See Dumornay v. State,* 106 Md.App. 361, 375, 664 A.2d 469 (1995) (appellant failed to move for judgment of acquittal at the close of all the evidence; therefore, the issue of sufficiency of the evidence was not properly before appellate court). *See also In re Nahif A.,* 123 Md.App. 193, 208, 717 A.2d 393 (1998) (applying Rule 4–

324(a) in a juvenile case). We have no discretion in the matter. *Williams v. State,* 131 Md.App. 1, 748 A.2d 1, *cert. denied,* 359 Md. 335, 753 A.2d 1032 (2000).

"Here, appellant failed to move for judgment of acquittal at the close of all the evidence. Accordingly, appellant has failed to preserve his sufficiency argument on appeal."

Turning to Antoine M.'s alternative argument that he had a *bona fide* belief that he was permitted to be on the property, the Court of Special Appeals stated:

"[I]t is clear under the facts presented that appellant could not have reasonably or honestly believed that he was welcome on the Keene property or in their house. Unlike the facts of *In re Jason Allen D.* [, 127 Md.App. 456, 733 A.2d 351 (1999) ], this case does not involve complicated landlord tenant law where there are two apparent authorities, the landlord and the parent tenant. Rather, this case involves simple home ownership law and *one* authority, the owner parents. If the Keenes' fifteen-year-old daughter had invited appellant onto the property, in contravention of her parent's orders and the no-trespass letter her parents wrote, appellant could not reasonably assert that he honestly believed that he was entitled to be on the property."

Antoine M. then filed in this Court a petition for writ of certiorari which we granted. *In re Antoine M.,* 379 Md. 225, 841 A.2d 339 (2004). In his petition and brief, Antoine M. initially argues that the Court of Special Appeals erroneously applied Rule 4–324(a) to the trial court juvenile delinquency proceeding. He relies on *In re Victor B.,* 336 Md. 85, 90, 646 A.2d 1012, 1014 (1994), where this Court held that "the criminal rules under Title 4 of the Maryland Rules do not apply to juvenile proceedings." Antoine M. further points out that Rule 4–324(a)'s requirement of a motion for judgment of acquittal at the close of all of the evidence applies only to jury trials. He asserts that the appellate courts should review the sufficiency of the evidence underlying the trial court's findings because a juvenile delinquency proceeding is a non-jury trial. Antoine M. invokes Rule 8–131(c), which provides that,

"[w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." Antoine M. contends that, under Rule 8–131(c), he was not required to make a motion for judgment of acquittal in order to preserve his right to appellate review of the sufficiency of the evidence.

Antoine M. next argues that the evidence presented in the trial court was insufficient to find that he had committed a trespass under Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27, §§ 576 and 577. According to Antoine M., the proper standards under the trespass statute are whether his being on the Keenes' property on August 26, 2002, was "wanton" and whether he reasonably had an "honest" or "good faith" belief that he was permitted on the property. Antoine M. maintains that the evidence showing that, after the June 2002 notice, the daughter invited him to be on the property, that the Keenes tolerated his presence on their property, and that the Keenes on occasion made him "welcome," demonstrated that he lacked the requisite *mens rea* required by the trespassing statute.[3] Consequently, Antoine M. argues, there was insufficient evidence of a criminal trespass.

The State responds by pointing out that, in a series of cases, the Court of Special Appeals has appeared to take the position that Rule 4–324(a), and particularly the requirement of a motion for judgment of acquittal at the close of all the evidence, applies to juvenile delinquency trials. In addition to the instant case, *see, e.g., In re Nahif A.,* 123 Md.App. 193, 208, 717 A.2d 393, 401 (1998); *In re Jason Allen D.,* 127 Md.App. 456, 473, 733 A.2d 351, 359–360 (1999). The State, however, relying upon *In re Victor B., supra,* 336 Md. 85, 646 A.2d 1012, and *Ennis v. State,* 306 Md. 579, 510 A.2d 573 (1986), "agree[s] with Petitioner that a motion for judgment of acquittal need not be filed under the circumstances of this case

---

**3.** Judge Wilner's dissenting opinion argues that the issue of the correct *mens rea* under the trespassing statute was not presented by the case or the certiorari petition. We shall address this contention, as well as other arguments made by the dissent, in footnote 6, *infra.*

to preserve a challenge to the legal sufficiency of the evidence." (State's brief at 4).

With regard to the merits, the State also agrees with Antoine M. that a person " 'has a defense to trespassing, when he honestly and in good faith believes that he is authorized to be on the property and when that belief is reasonable.' " (*Id.* at 5). The State "disagrees, however, that the juvenile court misapplied that law in adjudicating Antoine M. delinquent of trespassing." (*Ibid.*). The State argues that both the trial court and the Court of Special Appeals applied the correct legal standards, and that "the evidence was legally sufficient to support the juvenile court's determination that Antoine M. committed the delinquent act of trespass." (*Id.* at 9).

## II.

■ We agree with Antoine M. and the State that Rule 4–324(a) has no application to juvenile delinquency trials. Preliminarily, the provision in Rule 4–324(a) regarding a motion for judgment of acquittal at the close of all the evidence, by its very terms, is applicable only "in a jury trial." Moreover, Rule 4–324(a) in its entirety has no application to non-jury trials. *See Ennis v. State, supra,* 306 Md. at 590–597, 510 A.2d at 579–582, for a detailed discussion of Rule 4–324(a) and its predecessors, as well as the history and constitutional underpinnings of the motion-for-judgment-of-acquittal requirement in criminal jury trials and the lack of such requirement in non-jury trials. A juvenile delinquency trial is a non-jury proceeding.

More broadly, this Court in *In re Victor B., supra,* and several subsequent cases, held that Title 4 of the Maryland Rules, dealing with criminal procedure, does not apply in juvenile delinquency proceedings. Judge Raker for the Court in *In re Victor B.,* 336 Md. at 95–96, 646 A.2d at 1016–1017, explained:

" 'Title 4 applies to criminal matters, post conviction procedures, and expungement of records in the District Court and the circuit courts.'

To like effect, Rule 4–101, *Applicability,* under Title 4 states that '[t]he rules in this Title govern procedure in all criminal matters, post conviction procedures, and expungement of records in both the circuit courts and the District Court, except as otherwise specifically provided.' "

\* \* \*

"We find the language ... clear and unambiguous. Title 4 *only* applies to 'criminal matters, post conviction procedures, and expungement of records in the District Court and the circuit courts.' " Neither rule provides that Title 4 applies to juvenile proceedings. Because Title 4 deals solely with criminal matters, it was unnecessary for the drafters of the rule to expressly exclude juvenile causes from Title 4. Since juvenile proceedings are civil in nature and are governed by the specific rules of procedure set out under Chapter 900 [now Title 11], it was necessary for the drafters of Rule 1–101 to expressly exclude juvenile causes from the Title 2 civil rules of procedure. In light of the clear and unambiguous language of Rules 1–101 and 4–101, the criminal rules of procedure therefore do not apply to juvenile proceedings.

\* \* \*

"We find that neither the Maryland Rules nor the Juvenile Causes Act provides for the application of the criminal rules of Title 4 to juvenile proceedings. Furthermore, we find no implied incorporation of the criminal rules into the juvenile rules. Juvenile proceedings are governed by a separate, pervasive scheme of specific statutes and rules developed by the Maryland General Assembly and the Court of Appeals."

■ The holding of *In re Victor B., supra,* is dispositive of the issue. Title 4 of the Maryland Rules is inapplicable in juvenile proceedings. Consequently, a defendant in a juvenile proceeding is not required to make a motion for judgment of acquittal under Rule 4–324(a) in order to preserve his right to

appellate review of the sufficiency of the evidence. To the extent that parts of any Court of Special Appeals' opinions are to the contrary, they are overruled.

### III.

We now turn to the intertwined issues of the requisite *mens rea* under the trespassing statute and the sufficiency of the evidence showing that Antoine M. committed the delinquent act of a "wanton" trespass.

"A mere trespass to real property is not a crime at common law unless it amounts to a breach of the peace. Thus criminal trespass is for the most part a statutory creation." *In re Appeal No. 631,* 282 Md. 223, 226, 383 A.2d 684, 685 (1978), and cases there cited. *See also Johnson v. State,* 356 Md. 498, 506, 740 A.2d 615, 619 (1999). The Maryland statutory scheme with respect to criminal trespass is currently found in Title 6, Subtitle 4, of the Criminal Law Article, formerly Article 27, §§ 576–580. Those sections create criminal liability for trespassing upon both public and private property under certain conditions. In this case, we are concerned only with former Article 27, §§ 576(d) and 577(a)(2)(i) and (iii), which prohibited the "wanton" entry onto private property by a person who had been notified by the owner not to do so.[4] In addition, subsection (a)(2)(iii) expressly stated that the statute "may not be construed to apply to the entry on ... any land when the entry ... is done under a bona fide claim of right...." The current statute, § 6–403 of the Criminal Law Article, which the Revisor noted was without substantive change, specifically exempts entry "under a good faith claim of right...."

The definition section of the trespassing subtitle, previously Art. 27, § 576(d), and now § 6–401(d) of the Criminal Law Article, states that " 'wanton' retains its judicially determined meaning." We have said, particularly in reference to the

---

4. With regard to the notice requirement of Art. 27, § 577, *see* the discussion in *Johnson v. State,* 356 Md. 498, 740 A.2d 615 (1999).

criminal trespass statute, that " 'wanton' conduct" is "conduct 'characterized by extreme recklessness and utter disregard for the rights of others.' " *Maryland State Department of Personnel v. Sealing*, 298 Md. 524, 536, 471 A.2d 693, 699 (1984), quoting *Dennis v. Baltimore Transit Co.*, 189 Md. 610, 617, 56 A.2d 813, 817 (1948), and *Baltimore Transit Co. v. Faulkner*, 179 Md. 598, 602, 20 A.2d 485, 488 (1941). Moreover, the term "bona fide" has been defined as "[i]n good faith; honestly, openly, and sincerely; without deceit or fraud." *Ashton v. Brown*, 339 Md. 70, 91, 660 A.2d 447, 457 (1995), quoting *Black's Law Dictionary* 177 (6th Ed.1990). *See In re Jason Allen D., supra*, 127 Md.App. at 476, 733 A.2d at 361.

This Court in *Warfield v. State*, 315 Md. 474, 498–501, 554 A.2d 1238, 1250–1252 (1989), examined at length the *mens rea* required for criminal trespass. *Warfield, inter alia*, presented the issue of whether a man hired to shovel snow from the walkways of a private residence was guilty of criminal trespass to private property when he entered the garage of the home, which he did not have permission to enter. The defendant argued that his belief, at the time of the alleged trespass, that the owner of the home would have given him permission to enter the garage in order to open the garage door to remove snow piled in front of it, eliminated the intent necessary to convict him of criminal trespass. This Court, in an opinion by Judge Orth, agreed, deciding that the evidence was insufficient to sustain his conviction for criminal trespass. The Court held that the fact that the woman who hired the defendant would not have allowed him to enter the garage was not controlling in determining whether the defendant's belief was reasonable at the time he entered the garage. With regard to the *mens rea* required, this Court stated (315 Md. at 498–499, 500, 554 A.2d at 1250–1251, emphasis added):

"The common requirement of criminal trespass offenses is that the actor be aware of the fact that he is making an unwarranted intrusion. The Model Penal Code reflects this by making an intrusion culpable when a person knows he is not licensed or privileged to enter.... The knowledge requirement is designed primarily *to exclude from criminal*

*liability* both the inadvertent trespasser and *the trespasser who believes that he has received an express or implied permission to enter or remain.'*

* * *

"[T]he legislature [in enacting the criminal trespass statutes] intended that the intrusion, to be culpable, be with an awareness that it was unwarranted—lacking authority, license, privilege, invitation, or legality. To make culpable the inadvertent trespasser and the *trespasser who entertains a reasonable belief that his conduct was proper* would be unreasonable, illogical, inconsistent with common sense, and contrary to the interests of justice. Such results, we have stated, are to be avoided."

The Court continued (315 Md. at 501, 554 A.2d at 1252):

"The guilt of a person must depend on the circumstances as they appear to a reasonable man.... '[A]n honest and reasonable belief in the existence of circumstances which, if true, would have made the act done innocent, is a good defense.' "

A case very much on point is *In re Jason Allen D., supra*, 127 Md.App. 456, 733 A.2d 351. In that case, the juvenile defendant, Jason Allen D., was arrested when he was found on a housing authority's property after having been notified that he was not allowed on the property. He was subsequently charged in the Circuit Court for Frederick County with the delinquent act of committing a criminal trespass under Art. 27, § 577, and with resisting arrest. At trial, Jason claimed that he was invited onto the property by his cousin Morris, a minor who lived with his mother, as tenants, on the housing authority's property known as the Sanger property. That claim was substantiated by the testimony of Jason's cousin at trial. Despite this testimony, Jason was adjudicated delinquent for committing a criminal trespass and for resisting arrest. On appeal to the Court of Special Appeals, Jason argued that the trial court had insufficient evidence to adjudicate him delinquent for several reasons. Among them, Jason contended

that he had a bona fide right to be on the property because he was a "guest" or "invitee" of his cousin, a resident of the property. Jason further argued that the State failed to prove that his presence was "wanton" as required under Art. 27, § 577. The State, in response, made a "property law" type of argument similar to the finding of the trial judge in the case at bar. "[T]he State argued that Morris's invitation was ineffective to confer bona fide status upon Jason, either because Morris was a minor, or because a tenant's right to invite a social guest is superseded by the Housing Authority's right to exclude non-residents." *In re Jason Allen D., supra,* 127 Md.App. at 480, 733 A.2d at 363.

The Court of Special Appeals in the *Jason* case, however, rejected the State's argument, saying (127 Md.App. at 486, 733 A.2d at 366–367):

"In our view, the State has confused an actual or enforceable legal right with a bona fide claim of right. To be sure, the term 'bona fide' is not coextensive with an established legal right. On the continuum, a bona fide claim of right does not necessarily measure up to a valid claim of right. Thus, whether Jason's cousin, a Sanger resident, could lawfully invite Jason to enter the Sanger property is beside the point, because Jason only needed a bona fide claim of right to enter the Sanger property."

* * *

"Further, even if a minor's right to invite guests to the housing complex does not match the lessee's right, there was no evidence offered by the State to show that appellant knew or should have known that his cousin had neither authority, permission, nor the right to invite him to Sanger. Indeed, absent a sophisticated understanding by Jason of landlord-tenant rights or property rights, or knowledge that Morris had been prohibited by a parent or guardian or the lease itself from inviting Jason to visit him at Sanger, we do not see how Jason could have known that his cousin was unable to invite him lawfully to [the] Sanger property."

The Court of Special Appeals, after reviewing this Court's opinion in *Warfield v. State, supra,* 315 Md. 474, 554 A.2d 1238, along with other authorities, concluded (127 Md.App. at 490, 733 A.2d at 369):

> "Because the evidence showed that Jason had a bona fide claim of right, and his conduct was not wanton, the evidence was insufficient to support the finding of trespass under Art. 27, §§ 577."

Another significant Court of Special Appeals' opinion with regard to the *mens rea* required for criminal trespass is *Green v. State,* 119 Md.App. 547, 705 A.2d 133 (1998). In *Green,* after a discussion of this Court's opinion in *Warfield v. State, supra,* 315 Md. 474, 554 A.2d 1238, the Court of Special Appeals stated (119 Md.App. at 560–561, 705 A.2d at 138):

> "[*Warfield*] recognized that there are situations when a person intentionally enters the property of another, based on a reasonable belief that it is permissible to do so. In that circumstance, one is not necessarily criminally culpable, notwithstanding the actual intent to enter.
>
> "In order to be guilty of criminal trespass, even when one *intends* to enter the property of another, the *Warfield* Court made clear that one must be 'aware of the fact that he is making an unwarranted intrusion.'
>
> \* \* \*
>
> "Consequently, a defendant is not culpable if his 'belief is reasonable, that is, a belief [that] is not reckless or negligent. . . .'
>
> \* \* \*
>
> "In the case *subjudice,* the issue of implied permission was clearly generated by the defense's evidence. The defense contended that appellant reasonably believed he had permission to enter McDougald's residence."

The Court of Special Appeals in *Green* went on to summarize some of the evidence tending to show that the defendant reasonably believed that he had permission to enter the

property, namely that he previously was permitted to be on the property, that he had previously remained on the property for considerable periods, and that some of his possessions were on the property. Because the trial judge in *Green* had refused to instruct "the jury that it could not convict appellant unless he entered [the] dwelling 'with an awareness that it was unwarranted—lacking authority, license, privilege, [or] invitation'" (119 Md.App. at 561, 705 A.2d at 139), the appellate court reversed the conviction and remanded the case for a new trial.

In the case at bar, if the trial judge had found that Antoine M. was "aware of the fact that he [was] making an unwarranted intrusion," or was not a "'trespasser who believe[d] that he [had] received an express or implied permission to enter'" the Keenes' property on August 25, 2002 (*Warfield*, 315 Md. at 498–499, 554 A.2d at 1238), or lacked "an honest and reasonable belief" that he was allowed on the property (*Warfield*, 315 Md. at 501, 554 A.2d at 1252), such finding may well have been supported by the evidence. Some of Mrs. Keene's and some of Mr. Keene's testimony may have supported a finding of the requisite *mens rea*. On the other hand, Mrs. Keene's testimony concerning the number of times Antoine M. had been on the property, Mr. Keene's testimony that Antoine M. was made "welcome," and Antoine M.'s testimony that he was invited on the property by the Keenes' daughter, that he was on the property on several occasions, that Mrs. Keene herself invited him into the home on some occasions, that Mrs. Keene had him wait for her daughter on the front porch at other times, and that Mrs. Keene gave him dinner, would have supported a finding that Antoine M. lacked the requisite *mens rea* for a criminal trespass.[5]

---

**5.** The dissenting opinion indicates that the only evidence supporting a reasonable and good faith belief on the part of Antoine M. that he was allowed on the Keenes' property after the June 2002 letter was his testimony that the Keenes' daughter invited him. The dissent totally ignores all of the other evidence supporting such a belief, such as Mrs. Keene's testimony concerning the number of occasions Antoine M. was on the property, Mr. Keene's testimony that Antoine M. was made

The problem in the case is that the trial court made no finding regarding Antoine M.'s *mens rea* other than the statement that when Antoine M. received the notice, he "knew what the deal was...." Instead of making a factual finding concerning Antoine M.'s state of mind on August 26, 2002, based on all of the testimony, the trial court simply drew the "legal" conclusion that the Keenes' daughter did not have "the authority" to give Antoine M. permission to be on the property and that the prior written notice "cannot be countermanded by a teenage daughter."

 While the teenage daughter may not, as a matter of property law, have been able to "countermand" the notice, that is not the appropriate standard for determining whether the trespass was "wanton" and whether the defendant had a "bona fide claim" that he was allowed on the Keenes' property, within the meaning of the "wanton trespass" statute, former Art. 27, § 577. Under the *Warfield, Jason,* and *Green* cases, the proper legal standard is whether Antoine M. on August 26, 2002, had an honest and reasonable belief that he was allowed on the Keenes' property.[6]

---

"welcome," and Antoine M.'s testimony as to how he was received by Mrs. Keene when he would ask to see her daughter, the fact that Mrs. Keene invited him to dinner, etc.

The dissent also sets forth "evidence" from the pre-adjudication detention hearing and the post-adjudication disposition hearing. Such "evidence," however, cannot properly support what the trial judge determined at the adjudication hearing. If it were pertinent, the Department of Juvenile Justice's representative at the pre-adjudication hearing testified that the Keenes' daughter would invite Antoine M. into the house and "I don't think that she [Mrs. Keene] is always vehemently against his being there...."

6. Judge Wilner's dissent asserts that the proper legal standard was not an issue presented by the certiorari petition. The dissent contends that only two issues were presented by the certiorari petition, namely whether Rule 4-324(a) is applicable to juvenile delinquency proceedings and whether the evidence was sufficient to show that Antoine M. committed a trespass in violation of former Art. 27, §§ 576(d) and 577. Judge Wilner denies that the case and the certiorari petition present any issue regarding the required *mens rea* under the criminal trespass statute. Somewhat inconsistently, the dissent seems to recognize that the petitioner's testimony, that the Keenes' daughter invited him on the

■ "Ordinarily when a trial court's judgment is grounded upon an erroneous standard, we vacate the order and remand the case for the trial judge to decide the matter using the proper standard." *In re Adoption/Guardianship No. 10935,*

property after the June 2002 letter, may have been a basis for a "good faith belief that petitioner had a right to be on the property" (dissenting slip opinion at p. 8). As previously noted, the dissent erroneously states that this was the only evidence supporting a good faith belief by the petitioner. The dissent then rejects petitioner's testimony concerning the daughter's invitation by contending that the trial judge did not find as a fact that the daughter extended such an invitation and that there was evidence from Mrs. Keene indicating that no such invitation was extended. Judge Wilner's dissent relies on the principle that an appellate court must view the evidence in a light most favorable to the prevailing party.

The petition for a writ of certiorari clearly presented the intertwined questions of the sufficiency of the evidence and whether the trial court applied the proper *mens rea* standard under the wanton trespass statute. The petitioner's second question presented was as follows:

"2. Did the trial court misapply the law of trespass to the facts before it when it held that a fifteen year old's invitation to Petitioner to visit her at her home could not confer upon Petitioner a bona fide claim of right to enter that home, where Petitioner had previously received a no-trespassing notice issued by the fifteen year old's mother?"

The third question presented specifically relied on the evidence that the Keenes' daughter invited petitioner to come upon the property and the evidence

"that the property owners tolerated Petitioner's presence on the property on multiple occasions for almost two months after issuing a no-trespassing notice to Petitioner."

The body of the certiorari petition, after dealing with the applicability of Rule 4–324(a), was primarily devoted to the contention that the trial court misapplied the trespass statute, that the statute "prohibits only 'wanton entry' and does not apply to an entry 'under a bona fide claim of right' " (certiorari petition at 8), and that the trial court's refusal to recognize "a bona fide claim of right to be on the property" was "in conflict with" the case of *In re Jason Allen D., supra,* 127 Md.App. 456, 733 A.2d 351 (*id.* at 8–9). The certiorari petition, as well as the briefs on both sides, clearly presented the issue of the proper *mens rea* under the wanton trespass statute.

While the principle invoked by the dissent, that an appellate court should view the evidence in a light most favorable to the prevailing party, applies to the issue of the sufficiency of the evidence, the principle has no application where the trial court's judgment is based on an erroneous legal standard, where there is conflicting evidence under the correct legal standard, and where the trial court fails to make an evidentiary finding under the correct legal standard.

342 Md. 615, 630, 679 A.2d 530, 537 (1996), and cases there cited. Consequently, we shall remand this case to the Circuit Court for a new juvenile delinquency proceeding at which the court shall decide the case under the standard set forth in the *Warfield* case and its progeny.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WASHINGTON COUNTY.*

Dissenting Opinion by WILNER, J., which CATHELL, J., joins and HARRELL, J., joins in Part I only.

WILNER, J., dissenting.

With respect, I dissent. The Court has reached out to decide an issue that is not, in fact, presented on this record, and, as a result, has placed the case, petitioner, and the Juvenile Court in somewhat of a legal swamp.

I.

Petitioner was charged in a Juvenile Petition with wanton trespass on the property of Jerry and Jillian Keene on August 26, 2002, in violation of then-Maryland Code, Art. 27, § 577. The Juvenile Petition alleged that petitioner "unlawfully did enter, remain upon and cross over" the Keenes' property. (Emphasis added). Section 577(a)(2)(ii) made it a misdemeanor for a person to "remain on, enter on, or cross over the land, premises, or private property ... of another, after having been duly notified by the owner or the owner's agent not to do so." Section 577(a)(2)(iii) stated that "[i]t is intended that this paragraph is only to prohibit any wanton entry and may not be construed to apply to the entry on or crossing over any

land when the entry or crossing is done under a bona fide claim of right or ownership." [1] (Emphasis added).

The evidence before the Juvenile Court, taken at the adjudicatory hearing on October 16, 2002, was that petitioner, then 16 years old, was a persistent trespasser on the Keene property, apparently for the purpose of visiting the Keenes' 15–year-old daughter. Mr. and Mrs. Keene initially had no objection to the visits but protested when petitioner refused to leave the home, even at night time. Mr. Keene testified that on several occasions, he offered to drive petitioner home, but that petitioner would remain "around the periphery of the property all night, looking for an opportunity to come in." At one point, Mr. Keene threatened him with a shotgun.

At the suggestion of the police, Mrs. Keene, in June, 2002, wrote and delivered to petitioner a "no trespassing" note, informing him that he was not welcome on their property and that, if he continued to trespass, she would file charges against him. Petitioner acknowledged receiving that letter and ignoring it. Both Mr. and Mrs. Keene testified that, even after delivery of the letter, petitioner continued to come on the property and into their house. Petitioner alleged that he was dating the Keenes' daughter and that she invited him to the home. Without objection, Mrs. Keene testified to the contrary—that after the letter was delivered to petitioner, her daughter did not invite him: "Not since he's been served, she never invited him, no." [2] The daughter was not called to testify and gave no evidence in the case. The instant charges were filed as a result of Mrs. Keene coming home on August 26 and finding petitioner not just on her property but inside her house.

---

1. Given the wording of that sub-paragraph (iii), it would appear that the caveat or limitation did not apply to a person *remaining* on the property in violation of subsection (a)(2)(ii), but only to those who enter or cross over it.

2. The Court characterizes this clear, definitive, unambiguous statement as being "to the best of her knowledge, her daughter had not invited [petitioner] into the home on August 26, 2002." That is not a fair or accurate statement of what Mrs. Keene actually said.

Petitioner testified, but had, or professed to have, little recollection of many of the relevant facts. He acknowledged receipt of Mrs. Keene's "no trespassing" letter but could not remember when he received it. He acknowledged being on the property "a couple of times" thereafter and said that Mrs. Keene actually let him in, but he could not remember when he was there. He was "not sure" whether he was there on August 26 but that "either the 26th or around the 26th" he was allowed by Mr. Keene to sit on the porch. In addition to being "not sure" if he was even on the property on August 26, he was also "not sure," if he *was* there, whether Mrs. Keene invited him into the house. Both Mr. and Mrs. Keene testified that petitioner was not invited on to the property after the "no trespassing" notice was delivered to him.[3]

At the conclusion of the evidence taken at the adjudicatory hearing, defense counsel argued that "the uncontroverted testimony" was that, even after the no-trespassing notice was served on petitioner, "he was invited by the daughter on at least one, or a number of occasions, to come into the home" and that, as a result, "a reasonable person would believe that the previously given notice to ... not come on the property was no longer in effect." The court immediately and correctly disputed that there was any such "uncontroverted" testimony. After listening to argument, the court found that petitioner had received the no trespassing notice and that "on August 26, 2002, [petitioner] was there, *not as an invited guest,* but simply because he showed up." The court added that *"[p]er-haps* he was given permission by the daughter," but, even if so, the daughter had no authority to grant such permission after her parents—the owners of the property—gave the no trespassing notice. The court's ultimate conclusion was "I do

---

**3.** The Court places some weight on Mr. Keene's testimony that petitioner was made "welcome" on the property after the no trespass notice was delivered, ignoring entirely the facts that (1) Keene explained that petitioner was not welcome or invited to be on the property and that by using the word "welcome," he simply meant that he did not use violence to eject the uninvited petitioner, and (2) more important, the Court *found as a fact* that petitioner was uninvited and had not been welcome onto the property.

not find that after delivery of the letter that he was there as an invited guest. . . ." The court accordingly found that petitioner committed the act of trespass and, pending disposition, allowed him to return to his mother's home on "community detention," subject to a curfew and other restrictions.

Evidence taken at a pre-adjudication detention hearing in September, 2002, and at the post-adjudication disposition hearing in November indicated that the 16–year–old petitioner was largely out of control. His father was incarcerated in Florida, and he was in the custody of his mother, who testified that she was unable to control his behavior and that he often did not come home at night. She said that "[h]e's belligerent with us" and that "[h]e's gone for days and weeks at a time, and then when he returns home, there's no explanation what-soever, and he feels as though we shouldn't ask him where's he's been." At the detention hearing in September, the court was informed that petitioner, who had previously been placed on community detention, had not appeared at any of the scheduled conferences and that his mother did not know where he was. At the disposition hearing, the court was informed of some inappropriate behavior on petitioner's part while he was on the current community detention. The court accepted the recommendation of the Department of Juvenile Services that petitioner be placed in foster care, subject to certain restrictions.

Petitioner appealed, arguing to the Court of Special Appeals that the Juvenile Court "misapplied the law to the facts in its ruling" and that the evidence was insufficient to support the court's finding that he committed a trespass. The first argu-ment centered on the trial court's statement that the daughter did not have the authority to countermand her parents' no trespassing order. He posited that "[t]he fact that the Keenes' daughter was a minor does not mean that her invita-tion to Appellant could not confer upon him a bona fide claim of right to be present at her parent's house." That argument necessarily assumed that the daughter had, indeed, invited petitioner on to the property following the no-trespass letter and merely attacked the trial court's supposed finding that

such an invitation was insufficient to confer on him a bona fide claim of right to enter the property. The second argument was that, because "the evidence demonstrated that appellant had a bona fide claim of right to be on the property," he lacked the requisite *mens rea* to commit a trespass.

With respect to the sufficiency argument, the Court of Special Appeals concluded that, because petitioner failed to renew a motion for "acquittal" at the end of the case, as purportedly required by Maryland Rule 4–324(a), he failed to preserve that argument. The court did address the other argument, however, which it stated was "similar to the first."

The Court of Special Appeals took issue with petitioner's view of the trial court's ruling, which hinged on the court's statement that "[p]erhaps he was given permission by the daughter" but "I don't think she has the authority when the legal owners have notified a person that their property, their private property is off limits, that that cannot be counter-manded by a teenage daughter." Given the fact that Mrs. Keene expressly denied that her daughter had given any permission to petitioner to be on the property after the no-trespass letter was delivered to him in June, the appellate court found that the trial court "was merely speculating when it stated that '[p]erhaps [appellant] was given permission by the daughter.'" The court continued that, even if the trial court believed that the daughter had invited petitioner on to the property after the June letter, *"which is not the case"* (emphasis added), petitioner "could not have reasonably or honestly believed that he was welcome on the Keene property or in their house."

In his petition for *certiorari*, petitioner presented three questions. The first was whether the Court of Special Appeals erred in applying Rule 4–324 to a juvenile delinquency proceeding and thus finding that petitioner failed to preserve his sufficiency of the evidence complaint. The second and third points were essentially the arguments made to the Court of Special Appeals, arguments which erroneously assumed that the trial judge had found that the daughter did invite

petitioner on to the property but then concluded that such permission was irrelevant.

Two issues are presented on this record—whether the Court of Special Appeals erred in applying Rule 4–324 to a juvenile delinquency proceeding, and, if so, whether the evidence was nonetheless sufficient to sustain the court's finding of a trespass. In a discussion that consumes two pages and merits no more, this Court correctly holds that Rule 4–324 does not apply to juvenile delinquency proceedings. The rule applies only to criminal cases tried before a jury. The Court of Special Appeals was simply wrong in holding otherwise. As to sufficiency, this Court also concludes that "if the trial judge had found that [petitioner] was 'aware of the fact that he [was] making an unwarranted intrusion,'" that finding "may well have been supported by the evidence." That, of course, is precisely what the trial court *did* find and that finding not only "may well have been" supported by the evidence but clearly *was* supported by the evidence. That should be the end of this case.

Instead, the Court has swallowed the petitioner's bait and assumed that the trial court actually gave some credence to petitioner's claim that the daughter had continued to invite him on to the property following the June no trespass letter when, in fact, the record shows the exact opposite. Not only was there no testimony from the daughter in support of that claim, upon which petitioner's entire defense hinged, but it was expressly denied by Mrs. Keene. The Court seems to overlook the fact that, at the appellate level, we must view the evidence in a light most favorable to the prevailing party—the State in this case—and that, under Md. Rule 8–131(c), where, as here, the case was tried by the court, without a jury, we must give due regard to the opportunity of the trial judge to judge the credibility of the witnesses and not set aside the judgment on the evidence unless clearly erroneous. Judge Greene, for the Court of Special Appeals, was absolutely correct in regarding the trial court's statement that "perhaps" the daughter extended an invitation as mere speculation—an "even if" statement—which, upon a fair reading of the record,

is all that it was. *It certainly was not a fact found by the trial court.* Nowhere in this record does the Juvenile Court articulate or even imply a belief that the daughter (or anyone else) invited petitioner on to the property after the June notice was delivered. Absent a finding that the daughter or Mr. or Mrs. Keene actually extended such an invitation, there was no basis whatever for any reasonable or good faith belief that petitioner had a right to be on the property, and petitioner's argument falls like a house of cards.

II.

The Court's reaching out to decide an issue that is not presented is bad enough. The effect of that overreach is equally problematic. The trespass occurred in August, 2002. The adjudicatory hearing was held in October, 2002, and the finding of delinquency was made in November of that year. This case was argued before us in May, 2004. The Court now directs that the Juvenile Court's judgment be vacated and that the case be remanded "for a new juvenile delinquency proceeding at which the court shall decide the case under the standard set forth in *Warfield v. State,* 315 Md. 474, 554 A.2d 1238 (1989) and its progeny," *i.e.,* whether petitioner entertained a reasonable belief that his conduct was proper. That necessarily takes the case back to the adjudicatory stage. Apart from the fact that, as I read the trial court's statement, that *was* the standard it applied at the adjudicatory hearing, we will now have, because of the appellate delay, not a 16–year old but a nearly 21–year old petitioner returning to the Juvenile Court.

The record shows that petitioner was born on February 8, 1986. By the time this case returns and is likely to be set in for the mandated adjudicatory hearing, he will be close to, or maybe over, 21. The Juvenile Court will lose jurisdiction over petitioner when he turns 21 (*see* Maryland Code, § 3–8A–07(a) of the Cts. & Jud. Proc. Article), but even if it can act before then, if it confirms its finding that petitioner committed a delinquent act, what is it to do? A finding of delinquency requires proof not only that petitioner committed a delinquent

act but also that he "requires guidance, treatment, or rehabilitation." Cts. & Jud. Proc. Art. § 3–8A–01($l$). If the current judgment is vacated, as the Court directs, presumably a new judgment will have to be entered, and that will require a new determination of whether petitioner requires guidance, treatment, or rehabilitation. Is that determination to be made in light of the circumstances existing at the time of the new disposition hearing, or is the court simply to merge into a new finding of delinquent act the long outdated dispositional findings it made in November, 2002? It will have to do one or the other; it can't leave the matter in limbo, for there will then be no judgment Ordinarily, I expect, if a case is remanded for a new adjudicatory hearing and a new finding of delinquent act is made, the court would need to examine the child's status as of then, so as not to run the risk of imposing restrictions that once may have been appropriate but are no longer justified or *vice versa.*

Given that petitioner will be nearly 21 or over that age when the case is reheard, there will be little available for him in the juvenile justice system. As the court's entire judgment will be vacated, and thus a nullity, could the court, applying the factors set forth in Cts. & Jud. Proc. Article § 3–8A–06(e), decide, based on current circumstances, to waive its jurisdiction and send the case to criminal court?

These questions may arise not from any argument currently made by the parties but only from the Court's insistence, four years after the event and the judgment and nearly two-and-a-half years after the case was argued before us, on reaching out to address an issue that is not presented. We should either affirm the judgment below or dismiss the *certiorari* as improvidently granted.

Judge CATHELL has authorized me to state that he joins in this Dissent and Judge HARRELL has authorized me to state that he joins in Part I of this Opinion.